ORIGINAL

SEALED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR 2 2 2017

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. |
| v. | FILED UNDER SEAL |

| | |
|---|---|
| JAMSHID NORYIAN | (01) |
|   a.k.a. JAMES NORYIAN | |
| DEHSHID NOURIAN | (02) |
|   a.k.a. DAVID NOURIAN | |
| CHRISTOPHER RYDBERG | (03) |
| ASHRAF MOFID | (04) |
|   a.k.a. SHERRI MOFID | |
| LEYLA NOURIAN | (05) |
| LESLIE BENSON | (06) |
| MICHAEL TABA | (07) |
| KEVIN WILLIAMS | (08) |

**3-17CR-155-L**

## INDICTMENT

The Grand Jury charges:

At all times material to this indictment:

### General Allegations

**The Federal Employee Compensation Act and Health Care Benefits (Generally)**

1.    Title 18, United States Code, Section 24(b) defined a health care benefit program

as any public or private plan or contract, affecting commerce, under which any medical

benefit, item, or service was provided to any individual and included any individual or

entity who provided a medical benefit, item, or service for which payment may be made

Indictment – Page 1

under the plan or contract.  The Federal Employee's Compensation Act ("FECA") was a health care benefit program as defined in Title 18, U.S.C. Section 24(b).

2.      FECA provided for payment of workers' compensation benefits to federal employees who suffered an injury, disease, or death in the performance of duty.  To establish a claim for benefits, a medical condition was required to be causally related to a claimed injury, disease, or death.  Benefits were only available while a work-related condition continued.  The benefits under FECA included continuation of pay ("COP") for up to 45 calendar days, compensation for lost wages, all necessary medical care, medical supplies and prescription drugs, vocation rehabilitation services, and disability payments.  FECA provided coverage for pharmaceuticals necessary to treat symptoms which were the result of a work-related injury when prescribed by a doctor and medically necessary.

3.      The Department of Labor ("DOL") Office of Workers Compensation Program ("OWCP") administered the benefits under FECA.  Providers of health care services were required to enroll with DOL-OWCP to receive a provider identification number and reimbursement under FECA.  Form OWCP-1168 was used for enrollment and updating provider information.  By completing and submitting Form OWCP-1168, a provider certified that all the Federal and State licensure and regulatory requirements applicable to their provider type were satisfied.

4.      DOL-OWCP contracted with Affiliated Computer Services ("ACS") to provide medical claims processing and payments.  Providers were required to identify on each claim the services provided.  All claims submitted were required to be supported by

medical evidence.  The submission of a claim and acceptance of payment by a provider

signified that the service for which reimbursement was sought, was performed as

described, necessary, appropriate, and properly billed in accordance with accepted

industry standards.  It was not within industry standards, among other things, to charge

for services that were not necessary and not legitimately prescribed.

5.      Payments were sent to providers via electronic funds transfer ("EFT").

Remittance notices that listed all the claims paid on each EFT were sent to providers.

### Compound Drugs (Generally)

6.      In general, "compounding" is a practice in which a licensed pharmacist, a licensed

physician, or, in the case of an outsourcing facility, a person under the supervision of a

licensed pharmacist, combines, mixes, or alters ingredients of a drug or multiple drugs to

create a drug tailored to the needs of an individual patient.  Compound drugs are not

approved by the U.S. Food and Drug Administration ("FDA"); that is, the FDA does not

verify the safety, potency, effectiveness, or manufacturing quality of compound drugs.

The Texas State Board of Pharmacy regulates the practice of compounding in the State of

Texas.

7.      Compound drugs may be prescribed by a physician when an FDA-approved drug

does not meet the health needs of a particular patient.  For example, if a patient is allergic

to a specific ingredient in an FDA-approved medication, such as a dye or a preservative,

a compound drug can be prepared excluding the substance that triggers the allergic

reaction.  Compound drugs may also be prescribed when a patient cannot consume a

medication by traditional means, such as an elderly patient or child who cannot swallow an FDA-approved pill and needs the drug in a liquid form that is not otherwise available.

### The Defendants, Co-conspirators, and Related Companies

8.      Ability Pharmacy, Inc. (Ability) was a compound pharmacy doing business at 558 Hemphill Street, Fort Worth, Texas and incorporated on October 24, 2006.  Ability was a DOL- OWCP provider.

9.      Industrial & Family Pharmacy, Inc. (Industrial & Family) was a compound pharmacy doing business at 2301 NE 28th Street, Fort Worth, Texas and incorporated on January 26, 2015.  Industrial & Family was a DOL-OWCP provider.

10.     Park Row Pharmacy, LLC. (Park Row) was a compound pharmacy doing business at 701 West Park Row Drive, Suite 707, Arlington, Texas and formed on September 8, 2012. Park Row was a DOL-OWCP provider.

11.     Bandoola Pharmaceutical, LLC. (Bandoola) was a Texas company formed on August 29, 2014 that had a purported principal place of business at 401 College Avenue, Fort Worth, Texas.

12.     Jade and Joy Holdings, LLC (Jade and Joy Holdings) was a Texas company formed on May 17, 2011 that had a purported principal place of business at 6210 Campbell Road, Suite 160, Dallas, Texas.

13.     HLJM Holdings, LLC (HLJM Holdings) was a Texas company formed on January 26, 2012 that had a purported principal place of business at 558 Hemphill Rd, Fort Worth, Texas.

14.     Queen·Shiva LLC (Queen Shiva) was a Texas company formed on August 4, 2008 that had a purported principal place of business at 558 Hemphill Rd, Fort Worth, Texas.

15.     Defendant **Jamshid Noryian**, a resident of Travis County, was an owner and operator of Ability, Industrial & Family, Park Row, Queen Shiva, Bandoola, Jade and Joy Holdings, HLJM Holdings, and other companies.

16.     Defendant **Dehshid Nourian**, a resident of Collin County, Texas, was a licensed pharmacist and the President of Ability, Director of Industrial & Family, and Manager of Park Row.  He was the pharmacist-in-charge at Ability and Park Row.

17.     Defendant **Christopher Rydberg**, a resident of Tarrant County, was a Governing Person of Bandoola, the Chief Financial Officer of Ability, Vice President of Industrial & Family, Vice President of Park Row, Vice President of HJLM Holdings, and Vice President of Queen Shiva.

18.     Defendant **Ashraf Mofid**, a resident of Grayson County, Texas was a Governing Person of Bandoola and authorized signor for Bandoola bank accounts.

19.     Defendant **Leyla Nourian**, a resident of Collin County, was a licensed dentist and Managing Member of Jade and Joy Holdings, Member of HJLM Holdings, Member of Queen Shiva, and authorized signor for Bandoola bank accounts.

20.     Defendant **Leslie Benson**, a resident of McLennan County, was a licensed physician with a primary practice in occupational medicine.  Defendant **Leslie Benson** owned and operated three clinics located at 2114 Birdcreek Drive, Temple, Texas, 3320 Hillcrest Drive, Waco, Texas, and 3616 Altamesa Boulevard, Fort Worth, Texas.

21.    Defendant **Michael Taba**, a resident of Collin County, was a licensed physician with a primary practice in orthopedic surgery.  Defendant **Michael Taba** was a member of Advanced Orthopedics located at 1705 Ohio Drive, Suite 200, Plano, Texas.

22.    Defendant **Kevin Williams**, a resident of Ellis County, was a licensed physician with a primary practice in orthopedic surgery.  Defendant **Kevin Williams** was the President of Ennis Orthopedics PA, located at 802 W Lampasas Street, Ennis, Texas. Defendant **Kevin Williams** was also the Manager of Magnum Surgical Products LLC., located at 241 Cody Road, Ennis, Texas.

23.    From in or about May 2014 continuing to in or about March 2017, the exact dates being unknown to the Grand Jury, Ability, Industrial & Family, and Park Row received payments from DOL-OWCP for claims these pharmacies submitted to DOL-OWCP into JP Morgan Chase Bank accounts *2280 and *9863, Prosperity Bank account *9542, Wells Fargo Bank account *0302, and BBVA Compass Bank account *4076.

24.    From in or about May 2014 continuing to in or about March 2017, the exact dates being unknown to the Grand Jury, Ability, Industrial & Family, and Park Row billed FECA through DOL-OWCP at least approximately $158 million for claim reimbursements to which they were not entitled.

## Count One

### Conspiracy to Commit Health Care Fraud
### (Violation of 18 U.S.C. § 1349 (18 U.S.C. § 1347))

25.     The Grand Jury re-alleges and incorporates by reference as if fully alleged herein

paragraphs 1 through 24 the General Allegations of this indictment.

### The Conspiracy

26.     From in or about May 2014 and continuing to in or about March 2017, the exact

dates being unknown to the Grand Jury, in the Dallas Division of the Northern District of

Texas and elsewhere, the defendants, **Jamshid Noryian, Dehshid Nourian,**

**Christopher Rydberg, Ashraf Mofid, Leyla Nourian, Leslie Benson, Michael Taba**,

and **Kevin Williams** did knowingly, intentionally, and willfully combine, conspire,

confederate, and agree with each other and with other persons known and unknown to the

Grand Jury, to commit certain offenses against the United States, that is, to knowingly

and willfully execute, and attempt to execute a scheme and artifice to defraud FECA, a

health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain money and

property owned by and under the custody and control of FECA, by means of materially

false and fraudulent pretenses, representations, and promises, in connection with the

delivery of or payment for health care benefits, items and services, in violation of 18

U.S.C. § 1347.

## Object of the Conspiracy

27.    It was the object of the conspiracy for the defendants and others known and unknown to the Grand Jury to unlawfully enrich themselves, by submitting false and fraudulent claims for health care benefits to which they were not entitled.  The false and fraudulent claims were for compound medications that were not legitimately prescribed, not wanted, not needed, not used, and which were the product of kickbacks.

## Manner and Means of the Conspiracy

28.    The manner and means by which the defendants sought to accomplish the object of the conspiracy included, among other things:

## The Scheme to Defraud

29.    Defendant **Jamshid Noryian**, **Dehshid Nourian**, and **Christopher Rydberg** obtained and maintained control of Ability, Industrial & Family, and Park Row (collectively "the pharmacies") solely to achieve the objective of their scheme to defraud: to unlawfully enrich themselves by submitting false and fraudulent claims for health care benefits to which they were not entitled.

30.    Defendants **Christopher Rydberg**, **Dehshid Nourian**, and others filed, and caused to be filed, Payment Information Forms for Ability, Industrial & Family, and Park Row to transmit payment electronically from DOL-OWCP to the pharmacies.

31.    R.R., a pharmacist, formulated compound creams and vitamins with ingredients intended to maximize reimbursement from DOL-OWCP.  The creams were for scars,

wounds, and pain and had DOL-OWCP reimbursement rates of up to approximately $28,000 per container.

32.    Defendant **Jamshid Nourian,** R.R., and others created a prescription pad to be provided to doctors referring prescriptions to Ability.

33.    Defendant **Jamshid Noryian** marketed the creams to doctors treating DOL-OWCP patients and induced doctors to send unnecessary and excessive prescriptions for compound medications to the pharmacies with payments.

34.    Defendant **Leyla Nourian** recruited defendant **Michael Taba** to write prescriptions for compound medications for DOL-OWCP patients to be filled by Ability.

35.    Defendants **Leslie Benson** and **Michael Taba** toured Ability and were provided with prescription pads from the pharmacies to ensure that all prescriptions written by these doctors for compound creams would be sent to the pharmacies.

36.    Defendants **Leslie Benson**, **Michael Taba**, and **Kevin Williams** sent, and caused to be sent, prescriptions to the pharmacies in return for payments from defendants **Jamshid Noryian**, **Dehshid Nourian**, **Ashraf Mofid**, **Leyla Nourian**, and **Christopher Rydberg**.

37.    Defendants **Ashraf Mofid**, **Christopher Rydberg**, and **Leyla Nourian** operated Bandoola Pharmaceutical in order to make payments to doctors for referring prescriptions of DOL-OWCP patients to the pharmacies and concealed these payments with "promissory notes" to make it appear as though the payments were loans instead of payments for sending prescriptions to the pharmacies.

38.     Defendant **Jamshid Noryian** instructed employees of Ability to contact patients and doctors and request refills when the pharmacy was not processing sufficient prescriptions.

39.     Defendants **Leslie Benson**, **Michael Taba**, and **Kevin Williams** prescribed unnecessary pain creams when patients were already prescribed controlled substance medications for pain management.

40.     Defendant **Jamshid Noryian** controlled, and attempted to control, medical treatment for patients of defendants **Michael Taba** and **Leslie Benson** by offering and providing inducements to office staff to ensure compound prescriptions were written for the most patients and sent to Ability and Industrial & Family.

41.     Defendant **Jamshid Noryian** offered free rent and other inducements and payments to defendant **Leslie Benson**, his tenant, for writing prescriptions for compound medications and referring them to the pharmacies.

42.     Defendant **Leslie Benson** wrote prescriptions for compound medications for all patients regardless of whether they wanted or needed the medications.

43.     Defendant **Leslie Benson** referred approximately 3,968 prescriptions for DOL-OWCP patients to Ability and Industrial & Family.  Defendant **Leslie Benson** caused at least approximately $20 million to be billed by Ability and Industrial & Family to DOL-OWCP.

44.     Defendant **Jamshid Noryian** maximized, and attempted to, maximize prescriptions by contacting the office of defendant **Michael Taba** if prescriptions had not come in that week to ask why no prescriptions had come in.

45.     Defendant **Jamshid Noryian** instructed Ability employees to go to defendant **Michael Taba's** clinic where they would work with defendant **Michael Taba's** staff to fill out prescriptions, stamp defendant **Michael Taba's** signature on prescriptions, and contact patients about receiving prescriptions.

46.     Defendant **Michael Taba** instructed his employees to review his patient visit schedule at the end of each day, write prescriptions for compound creams for each patient, and send the prescriptions to the pharmacies.  The medications were not tailored to the individual patient; every patient received the same compound medications.

47.     Defendants **Ashraf Mofid**, **Leyla Nourian**, and **Christopher Rydberg** wrote checks to defendant **Michael Taba** for sending prescriptions to Ability and Industrial & Family Pharmacy.

48.     Defendant **Michael Taba** referred approximately 3,527 prescriptions to DOL-OWCP to Ability and Industrial & Family.  Defendant **Michael Taba** caused at least approximately $33 million to be billed by Ability and Industrial & Family to DOL-OWCP.

49.     Defendants **Jamshid Noryian** and **Dehshid Nourian** obtained Park Row for the sole purpose of filling out-of-state prescriptions written for DOL-OWCP patients by defendant **Kevin Williams**.

50.     ·Defendant **Kevin Williams** wrote prescriptions for wound and scar medications when patients did not need the medications because they had not had surgery and were not planning to have surgery.

51.     Defendant **Kevin Williams** wrote prescriptions with eleven refills so that refills were automatic.

52.     Defendant **Christopher Rydberg** met defendant **Kevin Williams** in the parking lot of Queen Shiva, and other locations, to deliver checks to him for referring prescriptions for DOL-OWCP patients to the pharmacies.

53.     Defendant **Jamshid Noryian** instructed his employees to deliver prefilled prescriptions to defendant **Kevin Williams**'s office for signature.

54.     Defendant **Kevin Williams** referred approximately 10,484 prescriptions to DOL-OWCP to Ability, Industrial & Family, and Park Row.  Defendant **Kevin Williams** caused at least approximately $90 million to be billed by Ability, Industrial & Family, and Park Row to DOL-OWCP.

55.     Defendant **Jamshid Noryian** closely monitored the claims submitted to DOL-OWCP, and the payments received, by checking a computer program several times a day to see the amount of money that had been billed for the day.  Defendant **Jamshid Noryian** instructed employees to text him the amount of money made at the end of the day if he was out of the office.  Defendant **Jamshid Noryian** told employees and others that he made $1 million a day off of the compound medications.

56.     Defendant **Jamshid Noryian**, **Dehshid Nourian**, **Christopher Rydberg**, **Ashraf Mofid**, **Leyla Nourian**, **Leslie Benson**, **Michael Taba**, and **Kevin Williams** caused to be submitted to FECA through OWCP, at least approximately $158 million in false and fraudulent claims and received at least approximately $82 million as payment for those claims.

## COUNT TWO
### Conspiracy to Launder Money and Engage in Monetary Transactions
### in Criminally Derived Property
### Violation of 18 U.S. C. § 1956(h)

57.    The Grand Jury re-alleges and incorporates by reference as if fully alleged herein

paragraphs 1- 24 of the General Allegations and 28 through 56 of Count One of this

Indictment related to the conspiracy to defraud a health care benefit program, specifically

FECA.

58.    Beginning in or about April 2015, and continuing thereafter to in or about March

2017, the exact dates being unknown to the Grand Jury, in the Dallas Division of the

Northern District of Texas and elsewhere, **Jamshid Noryian**, **Dehshid Nourian**,

**Christopher Rydberg**, **Ashraf Mofid**, and **Leyla Nourian** defendants herein, did

knowingly combine, conspire, and agree with each other and with other persons known

and unknown to the Grand Jury, to commit offenses against the United States in violation

of Title 18, United States Code, Section 1956 and Section 1957, to wit:

(a) To knowingly conduct and attempt to conduct financial transactions affecting

   interstate commerce and foreign commerce, with the proceeds of specified

   unlawful activity, that is health care fraud in violation of Title 18, United States

   Code, Section 1347, knowing that the transactions were designed in whole or in

   part to conceal and disguise the nature, location, source, ownership, and control of

   the proceeds of specified unlawful activity, and that while conducting and

   attempting to conduct such financial transactions, knew that the property involved

in the financial transactions represented the proceeds of some form of unlawful

activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and

(b) To knowingly engage and attempt to engage, in monetary transactions within the

United States, by, through or to a financial institution, affecting interstate and

foreign commerce, in criminally derived property of a value greater than $10,000,

such property having been derived from a specified unlawful activity, that is health

care fraud, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## THE MANNER AND MEANS OF THE CONSPIRACY

The manner and means used to accomplish the object of the conspiracy included, among others, the following:

59.     Defendants **Jamshid Noryian**, **Dehshid Nourian**, and **Christopher Rydberg**, obtained and maintained control of Ability, Industrial & Family, and Park Row, and caused the submission of false and fraudulent claims for reimbursement for compound medications that were not wanted, not needed, not used, not legitimately prescribed and which were the product of kickbacks.

60.     Defendants **Jamshid Noryian**, **Dehshid Nourian**, and **Christopher Rydberg** established and maintained control of bank accounts for Ability, Industrial & Family, and Park Row, into which reimbursement payments based on false and fraudulent claims were deposited, which reimbursement payments were then transferred.

61.     Defendants **Jamshid Noryian**, **Dehshid Nourian**, **Christopher Rydberg**, **Ashraf Mofid**, and **Leyla Nourian** created, obtained, and maintained control over entities and bank accounts for these entities including, among others, Bandoola, Jade and Joy Holdings, and HJLM Holdings and personal bank and investment accounts in order to conceal the fraud and the fraud proceeds.

62.     Defendants **Jamshid Noryian**, **Dehshid Nourian**, **Christopher Rydberg**, **Ashraf Mofid**, and **Leyla Nourian** would cause the transfer of monies between and among Bandoola, Jade and Joy Holdings, and HJLM Holdings and other entities, and personal bank and investment accounts in order to conceal the fraud and the fraud proceeds. The bank and investment accounts used in this scheme are:

| Account Name | Financial Institution | Account Number Ending In | Account Owner/ Authorized Signor |
|---|---|---|---|
| Ability Pharmacy, Inc. | Bank of America | *5271 | Dehshid Nourian Christopher Rydberg |
| Ability Pharmacy, Inc. | JP Morgan Chase | *2280 | Dehshid Nourian Christopher Rydberg |
| Ability Pharmacy, Inc. | Prosperity Bank | *6341 | Dehshid Nourian Christopher Rydberg |
| Ability Pharmacy, Inc. | Prosperity Bank | *9542 | Dehshid Nourian Christopher Rydberg |
| Industrial & Family Pharmacy, Inc. | JP Morgan Chase | *9863 | Dehshid Nourian Christopher Rydberg |

| Industrial & Family Pharmacy, Inc. | Wells Fargo Bank | *0302 | Dehshid Nourian<br>Christopher Rydberg |
|---|---|---|---|
| Park Row Pharmacy, LLC | Compass | *4076 | Christopher Rydberg |
| Bandoola Pharmaceutical, LLC | Wells Fargo | *8897 | Ashraf Mofid<br>Leyla Nourian<br>Christopher Rydberg |
| Bandoola Pharmaceutical, LLC | Bancorp South | *5371 | Christopher Rydberg |
| HJLM Holdings, LLC | Wells Fargo Bank | *3119 | Christopher Rydberg |
| Jade and Joy Holdings, LLC | JP Morgan Chase | *7273 | Leyla Nourian |
| Jade and Joy Holdings, LLC | JP Morgan Chase | *3462 | Leyla Nourian<br>Christopher Rydberg |
| Dehshid Nourian | Wells Fargo Bank | *6032 | Dehshid Nourian<br>Leyla Nourian |
| Sherri Mofid | Scottrade | *1792 | Ashraf Mofid |
| Sherri Mofid | Scottrade | *1793 | Ashraf Mofid |
| Dehshid Nourian | Scottrade | *7680 | Dehshid Nourian |
| Sherri Mofid | TD Ameritrade | *3760 | Ashraf Mofid<br>Christopher Rydberg<br>Jamshid Noryian |
| Dehshid Nourian | TD Ameritrade | *8494 | Dehshid Nourian |

63.    Defendants **Jamshid Noryian** and **Christopher Rydberg** purchased, vehicles, and real property in monetary transactions of greater than $10,000 using proceeds from the fraud scheme.

64.    Defendants **Jamshid Noryian** and **Christopher Rydberg** routinely purchased cashier's checks for large sums of money and payable to purported vendors, stored these checks in a safe deposit box for several months, and then redeposited the cashier's checks into the bank account of origin the following year.

65.    Below are particular examples of the money laundering alleged herein:

    a.   On or about October 27, 2015, defendant **Christopher Rydberg** withdrew $398,241.43 from the Ability bank account *9542 held at Prosperity Bank as a cashier's check.  The remitter on the cashier's check was Ability Pharmacy, Inc. and it was payable to McKesson.  On or about January 12, 2016, defendant **Christopher Rydberg** deposited the same cashier's check for $398,241.43 made payable to McKesson into the Ability bank account *9542 with the notation "not used for the purposes intended."

    b.   On or about October 27, 2015, defendant **Christopher Rydberg** withdrew $301,382.17 from the Ability bank account *9542 held at Prosperity Bank as a cashier's check.  The remitter on the cashier's check was Ability Pharmacy, Inc. and it was payable to Cardinal Health.  On or about January 12, 2016, defendant **Christopher Rydberg** deposited the same cashier's check for $301,382.17 made payable to Cardinal Health into the Ability bank account *9542 with the notation "not used for the purposes intended."

    c.   On or about January 11, 2016, defendants **Jamshid Noryian**, **Dehshid Nourian** and **Christopher Rydberg** caused the transfer of $5,266,000.00

from the Ability bank account *9542 held at Prosperity Bank into Ability

bank account *2280 held at JP Morgan Chase.  The next day, on or about

January 12, 2016, defendants **Jamshid Noryian**, **Dehshid Nourian,** and

**Christopher Rydberg** caused the transfer of $5,266,000.00 from Ability

bank account *2280 held at JP Morgan Chase into Jade and Joy Holdings

bank account *3462 held at JP Morgan Chase.  That same day, on or about

January 12, 2016, defendants **Jamshid Noryian**, **Leyla Nourian,** and

**Christopher Rydberg** caused the transfer of $5,266,000.00 from Jade and

Joy Holdings bank account * 3462 held at JP Morgan Chase into

defendants **Dehshid Nourian** and **Leyla Nourian**'s bank account ending in

*6032 held at Wells Fargo Bank.

d.  On or about January 22, 2016, defendants **Jamshid Noryian**, **Dehshid**

**Nourian,** and **Christopher Rydberg** caused the transfer of $3,500,000.00

from the Industrial & Family bank account *0302 held at Wells Fargo into

Industrial & Family bank account *9863 held at JP Morgan Chase.  Five

days later, on or about January 27, 2016, defendants **Jamshid Noryian**,

**Dehshid Nourian,** and **Christopher Rydberg** caused the transfer of

$3,500,000.00 from the Industrial & Family bank account *9863 held at JP

Morgan Chase into Jade and Joy Holdings bank account *3462 held at JP

Morgan Chase.  That same day, on or about January 27, 2016, defendants

**Jamshid Noryian**, **Leyla Nourian,** and **Christopher Rydberg** caused the

transfer of $3,500,000.00 from Jade and Joy Holdings bank account *3462 held at JP Morgan Chase into defendant **Ashraf Mofid**'s investment account *1793 held at Scottrade in the name of Sherri Mofid.

e.  On or about February 12, 2016, defendants **Jamshid Noryian**, **Dehshid Nourian,** and **Christopher Rydberg** caused the transfer of $2,750,000.00 from the Industrial & Family bank account *0302 held at Wells Fargo into Industrial & Family bank account *9863 held at JP Morgan Chase.  Four days later, on or about February 16, 2016, defendants **Jamshid Noryian**, **Dehshid Nourian,** and **Christopher Rydberg** caused the transfer of $2,750,000.00 from the Industrial & Family bank account *9863 held at JP Morgan Chase into Jade and Joy Holdings bank account *3462 held at JP Morgan Chase.  That same day, on or about February 16, 2016, defendants **Jamshid Noryian**, **Leyla Nourian,** and **Christopher Rydberg** caused the transfer of $4,750,000.00 from Jade and Joy Holdings bank account *3462 held at JP Morgan Chase into defendant **Ashraf Mofid**'s investment account *1793 held at Scottrade in the name of Sherri Mofid. The next day, on or about February 17, 2016, **Ashraf Mofid** caused the transfer of $4,750,000.00 from defendant **Ashraf Mofid**'s investment account *1792 held at Scottrade in the name of Sherri Mofid to defendant **Ashraf Mofid**'s investment account *1793 held at Scottrade in the name of Sherri Mofid.

All in violation of Title 18, United States Code, Section 1956(h).

Forfeiture Notice

(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

66.     Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. 2461(c), upon conviction of the Count One offense, the defendants, **Jamshid Noryian**, **Dehshid Nourian**, **Ashraf Mofid**, **Leyla Nourian**, **Christopher Rydberg**, **Leslie Benson**, **Michael Taba**, and **Kevin Williams** shall forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to Count One.

67.     Pursuant to 18 U.S. C. § 982(a)(1) and 28 U.S.C § 2461(c), upon conviction of the Count Two offense, the defendants **Jamshid Noryian**, **Dehshid Nourian**, **Ashraf Mofid**, **Leyla Nourian**, and **Christopher Rydberg** shall forfeit to the United States, any property real or personal, involved in such offense, and any property traceable to Count Two.

68.     The property subject to forfeiture includes, but is not limited to:

    a.   The real property located at 217 Bella Riva, Austin, Texas

    b.   The real property located at 2525 Handley Ederville Road, Richland Hills, Texas

    c.   The real property located at 867 FM 3133, Van Alstyn, Texas

    d.   The real property located at 6210 Campbell Road, Dallas, Texas

    e.   Industrial & Family account 0302 held at Wells Fargo

    f.   Ability Pharmacy account 2280 held at JP Morgan Chase

g.  Jade and Joy Holding account 3462 held at JP Morgan Chase

h.  Jade and Joy Holding account 7273 held at JP Morgan Chase

i.  Bandoola Pharmaceutical account 5371 held at Bancorp South

j.  Scottrade account ending in 1793 held in the name of Sherri Mofid

k.  Scottrade account ending in 7680 held in the name of Dehshid Mofid

l.  Gross proceeds in an amount of at least $82 million and the defendants are

notified that upon conviction, a money judgment may be imposed equal to

said amount.

66.  Pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c), if any of

the property described above, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without
difficulty,

the United States intends to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

A TRUE BILL

_____
FOREPERSON

JOHN R. PARKER
UNITED STATES ATTORNEY

_____
ADRIENNE E. FRAZIOR
Assistant United States Attorney
Texas State Bar No. 24059546
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:   214.659.8600
Facsimile:   214.659.8805
Email:       adrienne.frazior@usdoj.gov

**Indictment – Page 23**

Filed in open court this 22nd day of March, 2017

--------------------------------------------------------------------------------------------------------

                                                                                    Clerk

**Warrant to be Issued**

--------------------------------------------------------------------------------------------------------

UNITED STATES MAGISTRATE JUDGE
No Criminal Matter Pending

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE UNITED STATES OF AMERICA

v.

JAMSHID NORYIAN (1)
a.k.a JAMES NORYIAN
DEHSHID NOURIAN (2)
a.k.a DAVID NORYIAN
CHRISTOPHER RYDBERG (3)
ASHRAF MOFID (4)
a.k.a SHERRI MOFID
LEYLA NOURIAN (5)
LESLIE BENSON  (6)
MICHAEL TABA   (7)
KEVIN WILLIAMS (8)

SEALED INDICTMENT

18 U.S.C. § 1349 (18 U.S.C. § 1347)
Conspiracy to Commit Health Care Fraud

18 U.S. C. § 1956(h)
Conspiracy to Launder Money and Engage in Monetary Transactions
in Criminally Derived Property

18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)
Forfeiture Notice

2 Counts

A true bill rendered

DALLAS                                                          FOREPERSON